WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Zane Dickinson, | NO. CV-18-8037-PCT-DJH (DMF) |
| Petitioner, | |
| v. | **ORDER** |
| Charles L. Ryan, et al., | |
| Respondents. | |

Zane Dickinson filed a Petition for Writ of Habeas Corpus ("Petition"), challenging his convictions and sentences in Mohave County Superior Court. Because the Court has concluded that it is likely to recommend that Dickinson is entitled to relief under *Martinez v. Ryan*, 566 U.S. 1 (2012), the Court will order supplemental briefing on the merits of the Petition's ineffective assistance of trial counsel claim.

**Background.**

C.H. was run over by a truck and sustained multiple injuries. According to a witness, Dickinson drove the truck and injured C.H. deliberately because of a falling out they had had. Based on that theory of the case, Dickinson was indicted in Mohave County Superior Court for attempted second degree murder and other felonies.

The case proceeded to trial where C.H. testified that when he and Dickinson had a confrontation at someone's house, Dickinson "was telling me he's going to kill me, and

all this stuff, you know, and he cussed me and called me names." (Doc 6-2 at 56:11-13) The homeowner testified that "they were both threatening each other" and he broke up the fight. (Doc. 6-2 at 94:12) Later, Dickinson told the homeowner "jokingly" that he was going to run over C.H. (Doc. 6-2 at 98:24, 110:19)

C.H. testified that shortly thereafter, he was hit by a truck that he recognized at Dickinson's. (Doc. 6-2 at 56-60) C.H. testified that Dickinson smiled at him and the "next thing I know, he revved up his motor and he shot towards me. And I remember what happened. He hit the back of my bike, he had spun me all the way around about ten feet in the first. I landed on the dirt." (Doc. 6-2 at 60:11-14) C.H. testified that he got up and then the truck hit his bike from behind and if the truck "would have turned two or three feet, he would have totally hit me; but he didn't do that." (Doc. 6-2 at 61:8-10) C.H. testified that he "felt threatened, seriously threatened, because—because you know, at first I thought he was going to drive by, you what I mean; but the first time he clipped me and he had that look in his face like, you know, he was going to kill me, man, he was going to kill me, and I seen that on his face." (Doc. 6-2 at 68-69)

Dickinson did not testify, called no witnesses, and argued that this was a case of mistaken identity. During the discussion about jury instructions, conducted without the jury present, the Superior Court described attempted second degree murder to counsel as "conduct [that] will cause death or serious physical injury." (Doc. 6-3 at 112:11-13) Later, the Judge told the lawyers, "I wouldn't be shocked if they didn't find [him guilty of attempted second degree murder]; but I believe there's sufficient evidence to allow the case to go forward on the charge of attempted second degree murder." (Doc. 6-3 at 113:1-4) Subsequently, the Judge informed the parties that he had drafted the jury instruction.[1] (Doc. 6-3 at 127-129) As relevant here, the Dickinson's trial counsel did not object to the attempted second degree murder jury instruction. (Doc. 6-3 at 133-137)

---

[1] When discussing the instruction, the Judge cited to the right case, *State v. Ontiveros*, 81 P.3d 330 (Ariz. App. 2003), but read it to stand for the opposite conclusion: *Ontiveros* holds "that there is no offense of attempted second-degree murder based on knowing merely that one's conduct will cause serious physical injury. The offense of attempted second-degree murder requires proof that the defendant intended or knew that his conduct would cause death." *Id.* at 333, ¶ 14.

- 2 -

The Court read the following to the jury:

> The crime of attempted second degree murder has three elements. In order to find the defendant guilty of attempted second degree murder, you must find that, number one, the defendant intentionally did some act; and number two, the defendant believed such act was a step in the course of conduct planned to culminate in the commission of the crime of second degree murder; and number three, the defendant did so with the mental state required for the commission of the crime of second degree murder.
>
> It is not necessary that you find that the defendant committed the crime of second degree murder; only that he attempted to commit such crime.
>
> The crime of second degree murder has the following elements: Number one, the defendant caused the death of another person; and number two, the defendant either, A, did so intentionally or, B, knew that his conduct would cause death *or serious physical injury*.

(emphasis added). (Doc. 6-3 at 145:17-20)

At the end of a three day trial in Mohave County Superior Court, a jury found Dickinson guilty of multiple felonies, including attempted second degree murder. (Doc. 6-3 at 211, Ex. E) Subsequently, Dickinson was sentenced to consecutive sentences totaling 14 years. (Doc. 6-4 at 21-26)

On direct appeal to the Arizona Court of Appeals, Dickinson was represented by counsel who argued only that the attempted second degree murder jury instruction was incorrect as a matter of law. (Doc. 6-4 at 76, Ex. L) Because Dickinson's trial counsel had not objected to the jury instruction, the Court of Appeals reviewed for fundamental error. (Doc. 6-4 at 149, Ex. O at ¶ 10) Under fundamental error analysis, Dickinson had "the burden to establish that "(1) error exists, (2) the error is fundamental, and (3) the error caused him prejudice." (Doc. 6-4 at 149, Ex. O at ¶ 10) First, the Court of Appeals concluded that the jury instruction was erroneous because, under Arizona law, "attempted second degree murder can only be committed if the defendant intended to kill the victim or knew that the conduct would cause death." (Doc. 6-4 at 149, Ex. O at ¶ 11)

Next, the Court noted that it had previously "stated that instructing a jury on a non-existent theory of criminal liability is fundamental error" and concluded that, "under the facts and circumstances of this case, the error complained of was fundamental because it goes to the foundation of the case." (Doc. 6-4 at 150, Ex. O at ¶ 12)

Finally, the Court turned to the prejudice prong. Under Arizona law, Dickinson had to "affirmatively prove prejudice and [could] not rely upon speculation to carry his burden. To prove prejudice Dickinson [had to] show that a reasonable, properly instructed jury could have reached a different result." (Doc. 6-4 at 150, Ex. O at ¶ 13) After a detailed review of the parties' theories, the evidence received at trial, and the parties arguments to the jury, the Court of Appeals concluded that Dickinson had not been prejudiced by the error and, therefore, was not entitled to relief:

> The State's theory was that Dickinson intended to kill the victim; Dickinson's defense was mistaken identity and that he was not involved in the charged conduct in any respect. Neither of these competing views suggests that Dickinson intended to cause serious injury to the victim (as opposed to kill him), which is the fundamental error in the jury instructions. Based on the particular facts of this case—including the State's theory, Dickinson's defense, the evidence and the parties' arguments to the jury—Dickinson has failed to prove resulting prejudice from the fundamental error in the jury instruction. *Henderson,* 210 Ariz. at 568, ¶¶ 23-24, 26, 115 P.3d at 608. Accordingly, Dickinson's claim of fundamental, prejudicial error fails.

(Doc. 6-4 at 154, Ex. O at ¶ 22).

The Arizona Supreme Court denied the cross-petitions for review filed by the State and by Dickinson. (Doc. 6-4, Exs. P, Q, R, S, T) It appears that neither side petitioned the United States Supreme Court for certiorari. (Doc. 1 at 3)

Dickinson timely initiated post-conviction relief and, through counsel ("PCR Counsel"), alleged that he had received ineffective assistance of counsel because (1) his trial counsel had not called Dickinson to testify on his own behalf and because (2) trial counsel had not addressed statements made by the victim. (Doc. 6-5 at 16-17, Ex. U; Ex. V) As relevant here, PCR Counsel did not raise any ineffective assistance of trial counsel claims related to the jury instruction. The Superior Court concluded that Dickinson had "not made a colorable claim for relief" on either of these claims and denied relief. (Doc. 6-5 at 22, 23, Ex. W)

Dickinson then filed a second, *pro se* notice of post-conviction relief that alleged post-conviction counsel was ineffective for "failing to file any meritorious claims" but

did not explain what the meritorious claims would have been. (Doc. 6-5 at 29-20, Ex. X) The Superior Court denied relief concluding that Dickinson "was not entitled under [Arizona] law to effective assistance of counsel on his first Rule 32 proceeding." (Doc. 6-5 at 34, Ex. Y)

Dickinson filed two Petitions for Review with the Arizona Court of Appeals, one for each of his denied notices of post-conviction relief. In both cases, the Court of Appeals granted review but denied relief. (Doc. 6-5 at Exs. Z, AA, BB, CC)

Dickinson timely initiated habeas relief. His Petition raises two claims for relief: (1) the incorrect jury instruction was prejudicial and (2) he received ineffective assistance of counsel because trial counsel had not objected to the flawed jury instruction ("IATC Claim"). (Doc. 1 at 5, 6) Respondents contend that the Petition contains only claims that cannot be reviewed because they are unexhausted and subject to a procedural default without exception. (Doc. 6) In his reply, Dickinson explains that he filed his second PCR "in hopes of trying to preserve my claim of ineffective trial counsel" under *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Detrich v. Ryan*, 740 F.3d 1237 (2013). (Doc. 8 at 4)

**The Petition's IATC claim appears to be procedurally defaulted.**

First, undersigned is inclined to agree with Respondents that the Petition's IATC Claim is procedurally defaulted. (Doc. 6 at 14) For the reasons below, undersigned is inclined to recommend such in a report and recommendation to the United States District Judge.

Legal Standard. A state prisoner must properly exhaust all state court remedies before this Court can grant an application for a writ of habeas corpus. 28 U.S.C. § 2254(b)(1), (c); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). Arizona prisoners properly exhaust state remedies by fairly presenting claims to the Arizona Court of Appeals in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 843-45 (1999); *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994). To be fairly presented, a claim must include a statement of the operative facts and the specific federal

legal theory. *Baldwin v. Reese*, 541 U.S. 27, 32-33 (2004); *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996); *Duncan*, 513 U.S. at 365-66.

An implied procedural bar exists if a claim was not fairly presented in state court and no state remedies remain available to the petitioner. *Teague v. Lane*, 489 U.S. 288, 298-99 (1989); *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002); *Poland v. Stewart*, 169 F.3d 573, 586 (9th Cir. 1999); *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989).

<u>Analysis</u>. The Court's review of Dickinson's post-conviction papers indicates that his post-conviction counsel never raised the Petition's IATC Claim, namely that trial counsel should have objected to the jury instruction. (Doc. 1 at 6)

Because this claim was never raised, it was not exhausted. The IATC Claim is now subject to an implied procedural bar because it was not fairly presented in state court and no state remedies remain available to Dickinson because he is now precluded or time-barred from raising his claims in a successive and untimely Rule 32 petition under Arizona Rules of Criminal Procedure 32.1(d)-(h), 32.2(a) & (b), or 32.4(a).

**Does *Martinez* excuse the procedural default?**

Dickinson argues that he is entitled to relief under *Martinez v. Ryan*, 566 U.S. 1 (2012). (Doc. 8 at 4) For the reasons below, undersigned is inclined to recommend such in a report and recommendation to the United States District Judge.

<u>Legal Standard</u>. This Court can review a procedurally defaulted claim if the petitioner can demonstrate either cause for the default and actual prejudice to excuse the default, or a miscarriage of justice. 28 U.S.C. § 2254(c)(2)(B); *Schlup v. Delo*, 513 U.S. 298, 321 (1995); *Coleman*, 501 U.S. at 750; *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *United States v. Frady*, 456 U.S. 152, 167-68 (1982).

Under the Supreme Court's ruling in *Martinez*, Dickinson could demonstrate cause and prejudice sufficient to excuse his procedurally defaulted IATC Claim if he can (1) demonstrate that he received ineffective assistance of post-conviction counsel and also (2) demonstrate the merits of his underlying ineffective assistance of trial counsel

claim. 566 U.S. at 11. As articulated by the Ninth Circuit, the test is as follows:

> First, to establish "cause," he must establish that his counsel in the state postconviction proceeding was ineffective under the standard of *Strickland*. *Strickland*, in turn, requires him to establish that both (a) post-conviction counsel's performance was deficient, and (b) there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different. *See Strickland*, 466 U.S. at 687, 694, 104 S. Ct. 2052. Second, to establish "prejudice," he must establish that his "underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez,* 132 S. Ct. at 1318.

*Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014).

Analysis. The logical starting point for unraveling the layers of a *Martinez* claim is a merits analysis of the underlying IATC Claim. Here, Dickinson's trial counsel never objected to the legally erroneous jury instruction for attempted second degree murder. As a result, the erroneous jury instruction was given and Dickinson was subsequently convicted of attempted second degree murder.

Trial counsel's failure to object changed the appellate standard of review. If he had objected, the Court of Appeals would have reviewed for harmless error which would have meant that the State had the burden "to prove beyond a reasonable doubt that the error did not contribute to or affect the verdict or sentence." *Ariz. v. Henderson*, 115 P.3d 601, 607, ¶ 18 (Ariz. 2005). Instead, because trial counsel did not object, the Court of Appeals reviewed the jury instruction claim for fundamental error and so the burden shifted to Dickinson to show that error existed, the error was fundamental, and the error caused him prejudice.

Thus, the question is whether the different standard of review impacted the outcome of the direct appeal. The Arizona Court of Appeals concluded that the error in Dickinson's attempted second degree murder jury instruction was fundamental. "By its very nature, fundamental error is usually not 'harmless.'" *Ariz. v. Corrales*, 676 P.2d 615, 627 (Ariz. 1983). However, the analysis remains case specific. *Id*. Here, the erroneous jury instruction expanded attempted second degree murder from correctly requiring the jury to find that Dickinson intended or knew that his conduct would cause

death to incorrectly allowing the jury to find him guilty if he intended or knew that his conduct would cause serious physical injury. If it is clear that the jury relied on the correct portion of the jury instruction, namely conduct that would cause death, then the erroneous jury instruction would almost certainly satisfy the harmless error standard.

The Court has reviewed all of the trial transcripts and concludes that very little of the received evidence[2] indicated that Dickinson intended or knew that his conduct would cause the victim's death. (Docs. 6-1, 6-2, 6-3) Moreover, the Court further notes that the Superior Court judge was skeptical that a jury would convict Dickinson on this count. Thus, it seems likely that the jury relied on the erroneous portion of the instruction to find Dickinson guilty. Put another way, this Court cannot confidently say that the jury instruction error was harmless.

From this flows what appears to be the inevitable conclusion that the different standard of appellate review was dispositive in determining the outcome of Dickinson's jury instruction claim on direct appeal. Thus, if trial counsel had objected to the jury instruction, Dickinson may well have been entitled to relief from the Arizona Court of Appeals. As a result, the Court is inclined to conclude that the IATC Claim has merit and so the claim is "substantial" for purposes of the second prong of *Martinez*.

By extension, concluding that the IATC Claim has merit would also mean that Dickinson can satisfy the first prong of *Martinez*, namely that he received ineffective assistance of PCR counsel. PCR Counsel failed to raise the IATC Claim and, based on the Court analysis above, there is a "reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different." *Clabourne*, 745 F.3d at 377.

Because the Court is inclined to recommend that Dickinson has satisfied both prongs of the *Martinez* analysis, the Court's report and recommendation to the United States District Judge should also address the merits of the procedurally defaulted IATC Claim. Thus, the Court will permit the parties to submit supplemental briefing on the

---

[2] The jury heard videos that were not transcribed but were subsequently referenced by the State in closing. (Doc. 6-3 at 101:9-14)

merits of the IATC claim for trial counsel's failure to object to the jury instruction.

Also, for the reasons above, it may be in the interests of justice that Petitioner be appointed counsel pursuant to 18 U.S.C. § 3006A(a)(2)(B) for this supplemental briefing stage of the proceedings.

Accordingly,

**IT IS ORDERED** that within 30 days of the date of this Order, Respondents shall file a Supplemental Answer on the merits of the Petition's ineffective assistance of trial counsel claim. Petitioner may file a supplemental reply within 21 days after the Supplemental Answer is filed.

**IT IS FURTHER ORDERED** if Petitioner seeks appointment of counsel at this stage of the proceedings, then Petitioner shall file a motion requesting such within 21 days of the date of this Order.

Dated this 12th day of July, 2018.

_____
Honorable Deborah M. Fine
United States Magistrate Judge